# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ALVIN VAUGHT ET UX** | § | |
| **NANCY VAUGHT** | § | |
| **Plaintiffs** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| **POWER DEFAULT SERVICES,** | § | **CIVIL ACTION NO: 5:17 -cv-00170 OLG** |
| **INC., and WILMINGTON TRUST,** | § | |
| **NATIONAL ASSOCIATION NOT** | § | |
| **IN ITS INDIVIDUAL CAPACITY** | § | |
| **BUT AS TRUSTEE OF ARLP** | § | |
| **SECURITIZATION TRUST,** | § | |
| **SERIES 2014-2,** | § | |
| **Defendants** | § | |

## PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR TEMPORARY RESTRAINING ORDER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COME Plaintiffs, ALVIN VAUGHT ET UX NANCY VAUGHT, who file this, their

Amended Complaint Petition and Request for Temporary Restraining Order against OCWEN

LOAN SERVICING, LLC (hereinafter sometimes referred to as "Ocwen"), POWER DEFAULT

SERVICES, INC. (hereinafter sometimes referred to as "Power Default"), WILMINGTON

TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT AS

TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2 (hereinafter sometimes

referred to as "Wilmington"), Defendants in the above-styled and numbered cause, seeking to

restrain them, their investors, insurers, attorneys, agents, servants, servicers, contractors and/or

employees, from directly or indirectly exercising the forcible entry and detainer on Plaintiff's

property, foreclosing and/or selling, or attempting to foreclose and/or sell, the house and property

located at 210 English Oaks Circle, Boerne, Texas 78006, and identified as Ocwen Loan Number 7130575850 and would show as follows:

## I. <u>INTRODUCTION AND PARTIES</u>

1.      This is a suit concerning the attempted foreclosure and clouding of title to a residential homestead in Kendall County, Texas. There is a factual dispute as to whether a public sale was called pursuant to the State of Texas statutes for non-judicial foreclosures. Plaintiffs allege that there was no sale and the Substitute Trustee's Deed filed in the real property records of Kendall County constitutes Real Estate Fraud and the filing of a false document. The filing of the document has clouded title to the property made the basis of this suit and the Plaintiffs allege damages therefrom.

2.      Plaintiffs, **ALVIN AND NANCY VAUGHT,** are individuals who maintain a residence at 210 English Oaks Circle, Boerne, Texas 78006.

3.      Defendant, **OCWEN LOAN SERVICING, LLC** is registered in the State of Texas as a Limited Liability Corporation with offices located at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409. **OCWEN LOAN SERVICING, LLC** has been served through its registered agent, Corporation Service Company d/b/a CSC — Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, Texas 78701, answered and no further service is necessary.

3.      Defendant**, POWER DEFAULT SERVICES, INC.** is registered in the State of Texas as a Corporation with offices located at 1520 S. Beeline Rd., Coppell, Texas 75019. POWER DEFAULT has been served through its registered agent, C T Corporation System, 1000 Abernathy Rd., Suite 200, Atlanta, GA 30328, answered and no further service is necessary.

4.      Defendant, **WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP SECURITIZATION TRUST, SERIES 2014-2** is registered in the State of Delaware as a Statutory Trust filed on October 21, 2014. 'WILMINGTON TRUST has been served through its registered agent, Wilmington Trust National Association, Rodney Square N., 1100 N. Market St., Wilmington, DE 19890, answered and no further service is necessary.

## II.      JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and at least one of the parties of Plaintiff is a citizen of a state different from any Defendant, and the matter in controversy exceeds the sum or value of $75,000,000, exclusive of interest and costs. For diversity jurisdiction purposes, a national bank is a citizen of the state designated as its head office on its organization certificate. See **Wachovia Bank, N.A. v. Schmidt**, 546 U.S. 303, 306 (2006).

6.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 based on the federal question presented by Defendants' alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(a) and (c). Defendants do substantial business within this Federal Judicial District, receive substantial compensation and profits from the servicing of home mortgage loans in this District, has made material omissions and misrepresentations, breached contracts and/or other promises, and engaged in unlawful practices in this District, to subject Defendants to personal jurisdiction in this District. In addition, Plaintiffs reside in this District and the real property made the basis of this suit is in the Western District of Texas.

### III.    BACKGROUND

8.      Plaintiffs purchased the subject property in April of 2008. In 2013, Plaintiffs loan was transferred to the Defendant Ocwen. Thereafter, Plaintiffs got behind on their payments due to financial hardship. To work out payment issues, Plaintiffs requested a loan modification. Plaintiffs agreed to pursue this option and began to gather the requisite records and materials as requested by representatives of Ocwen.

9.      Plaintiffs thereafter spoke with <u>many</u> representatives of Ocwen regarding the status of their loan. Plaintiffs became increasingly concerned virtually every representative they spoke with gave them information, in response to serious inquiries about important matters, which Plaintiffs later find out was wholly incorrect or that the Ocwen representatives failed to do what they had agreed to do in material circumstances. Ultimately, Ocwen assigned a single representative to handle this matter but the results have been equally problematic. This resulted in many additional problems which impacted the status of Plaintiffs' loan on the property located at 210 English Oaks Circle, Boerne, Texas 78006. Plaintiffs previously requested verification of the debt pursuant to the Fair Debt Collection Practices Act (15 U.S.C. §§ 1601 et seq.) and pursuant to the Texas Debt Collection Practices Act contained in the Finance Code at Chapter 392.

10.     No response from Ocwen has ever been received. It is important to note that these statutes allow a Borrower the right to challenge collection demands and have 30 days to request and obtain verification of the alleged debt prior <u>to</u> any foreclosure sale. Moreover, Plaintiffs have previously requested that they be allowed to make payments on the loan. Omen refused to allow such payments unless Plaintiffs first paid off the entire balance that is in arrears or successfully completed a loan re-modification.

11.     At Ocwen's request, Plaintiffs repeatedly provided financial information to representatives of the company for the purpose of having said information be used for evaluation in the home loan re-modification program offered through Ocwen. Plaintiffs repeatedly went to great lengths to search out the information that was requested. However, Plaintiffs were later informed by subsequent Ocwen representatives that none of the information was ever provided to the loan modification program.

12.     Plaintiffs repeatedly informed Ocwen representatives that they stood ready, willing and able to work out the issues with the subject loan. Plaintiffs pulled their financial records on numerous occasions to secure a loan modification as suggested by Ocwen. Plaintiffs are still in possession of the documentation they went to a lot of effort to procure. Plaintiffs have sought, and continue to desire, the opportunity to resolve the disputed amounts Ocwen claims are owed. Plaintiffs have made <u>many</u> calls to Ocwen to try to avoid ending up where Plaintiffs now find themselves. Due to the lack of care or incompetence of their representatives, Plaintiffs could not get Ocwen to give them correct information about the status of their loan or work with them to resolve the disputed amounts. Plaintiffs have come to the unfortunate realization that Ocwen would rather simply take their home from than try to correct their own mistakes and arrive at an amicable resolution to this matter.

13.     Evidence of Plaintiffs' contentions is corroborated by even the most basic internet research. In recent years, a lawsuit filed against Ocwen by the Consumer Financial Protection Bureau (CFPB) and <u>49 states</u> claiming, *inter alia,* that Ocwen engaged in misconduct related to the servicing of single family residential mortgages which resulted in premature and unauthorized foreclosures, violation of homeowners' rights and protections the use of false and deceptive affidavits and other documents. *See Exhibit 1.* The CFPB is charged with enforcing

the Dodd-Frank Wall Street Reform and Consumer Protection Act Following substantial

evidence of wrongdoing, Ocwen agreed to a Consent Order under which they ultimately agree

to provide **$2 Billion** in principal reduction to borrowers, to refund over $125 Million to nearly

185,000 borrowers who had been foreclosed upon and agreed to adhere to significant new

homeowner protections. *See Exhibit 2 attached to Plaintiffs' Original State Petition*

*incorporated by reference the same as if set forth at length in full.*

14.     Despite agreeing to the terms of the Consent Order, however, Ocwen continues to have

new class action lawsuits and claims filed against it, including lawsuits for backdating

thousands of letters to homeowners which materially affected the homeowners' rights. *See*

*Exhibit 3 attached to Plaintiffs' Original State Petition incorporated by reference the same as if*

*set forth at length in full.* The company has also been accused of commencing foreclosure

actions without sufficient documentation and having gaps in the records regarding the servicing

of certain loans. *See Exhibit 4 attached to Plaintiffs' Original State Petition incorporated by*

*reference the same as if set forth at length in full.* Ocwen is also the subject of thousands upon

thousands of complaints nationwide with the Better Business Bureau and other consumer

watchdog organizations. *See Exhibits 5 – 7 attached to Plaintiffs' Original State Petition*

*incorporated by reference the same as if set forth at length in full.*

15.     It should be noted that Ocwen is alleged to be committing violations of homeowner

rights in the State of Texas as well. *See Exhibit 8 attached to Plaintiffs' Original State Petition*

*incorporated by reference the same as if set forth at length in full.*  Also, there are blogs on the

internet that are exclusively dedicated to discussions of the problems that homeowners have had

with Ocwen. *See Exhibits 9 – 10 attached to Plaintiffs' Original State Petition incorporated by*

*reference the same as if set forth at length in full.* There is even a Facebook page dedicated to

exposing Ocwen's fraudulent practices. *See Exhibit 11 attached to Plaintiffs' Original State Petition incorporated by reference the same as if set forth at length in full.* The litigation referenced herein reveals actions and omissions by Ocwen that are also being illegally perpetrated on Plaintiffs to Plaintiffs' material and immediate detriment. Plaintiffs also contend that Ocwen's actions and omissions violate §§17.46(a) and (b) of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Corn. Code Ann. §§17.41et. *seq.* (DTPA).

16.      Defendant, Power Default, was retained by Ocwen to serve as the substitute trustee al a foreclosure sale that was scheduled to take place in Kendall County, Texas on January 5, 2016 between 1:00 p.m. and 4:00 p.m. However, Plaintiffs had secured a Temporary Restraining Order at approximately 10:50 a.m. that morning. *See Exhibit 12 attached to Plaintiffs' Original State Petition incorporated by reference the same as if set forth at length in full.* A copy of the Order was sent to both Ocwen and Power Default before the sale was to begin at 1:00 p.m. Defendants subsequently contend that Plaintiffs property was sold to Defendant Wilmington at the sale (even though the sale would have been in violation of the Court's Order restraining the sale).

17.      What should concern both the State and Federal Court, as is established by the Affidavits attached to the Plaintiffs' Original Petition and incorporated herein by reference the same as if set forth at length in full, no representative of any of the Defendants ever showed up for the sale on January 5, 2016 as was required for any sale to take place pursuant to State Law. *See Exhibits 13 – 14 attached to Plaintiffs' Original State Petition incorporated by reference the same as if set forth at length in full.* No properties of any kind or origin whatsoever were sold at the foreclosure sale and site in Kendall County on January 5, 2016.

18.     Despite the multiple witnesses to attest to the lack of any sale of any property whatsoever, in October of 2016 (more than 9 months after the purported sale), Jill Nichols, an employee of Defendant**, Power Default**, signed a substitute trustee's deed claiming the date of the sale of the property was January 5, 2016. *See Exhibit 15 attached to Plaintiffs' Original State Petition incorporated by reference the same as if set forth at length in full.* The substitute trustee's deed also falsely alleges that the sale took place "in the area of said courthouse designated by the commissioner's court of Kendall County, Texas" and that the sale took place at 1:08 p.m. Jill Nichols/Defendants then caused this fraudulent deed to be filed in the official public records of Kendall County, Texas.

## IV.     CAUSES OF ACTION

**COUNT 1 - NEGLIGENCE**

19.     Plaintiffs assert that the Defendants, collectively, have a duty to act in a reasonable and commercially responsible way in the handling of the Plaintiffs' loan.  negligently handled the matter of Plaintiffs' rights in the subject property. Plaintiffs have been attempting in good faith for several years to work this matter out with Defendants Ocwen and Power Default. Despite Plaintiffs' best efforts, the Defendants, collectively, have acted, or failed to act, which has caused damage to Plaintiffs in an amount in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery

**COUNT 2 — NEGLIGENT HIRING**

20.     Defendant Ocwen negligently hired or supervised Defendant Power Default to serve as the substitute trustee regarding Plaintiffs' property. Defendant Ocwen also failed to adequately train Defendant Power Default to ensure that Defendant Power

Default would not fail to attend a scheduled foreclosure sale, would not file a fraudulent deed and would not otherwise against the interests of clients, including Plaintiffs.

21.     Each of the above-referenced acts or omissions, singularly or in combination with others, constitutes a breach of such duties, which has caused damage to Plaintiffs in an amount in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery.

**COUNT 3 — VIOLATION OF CPRC CHAPTER 12 (independent count of fraud/clouding)**

22.     Jill Nichols, an employee of Defendant, **Power Default**, filed a Substitute Trustee's Deed pertaining to the property on or about October 17, 2016 at a lime by which the Defendants, collectively, knew or should have known that 1. the sale of the property had been enjoined by a District Judge of Kendall County <u>before</u> the time of the scheduled foreclosure sale and 2. that no foreclosure sale occurred during the scheduled sale period as no representative of any of the Defendants came to the sale on January 5, 2016. Therefore, Defendants, collectively, have violated Chapter 12 of the Texas Civil Practices and Remedies Code by filing a fraudulent deed in the official records of Kendall County, Texas.

23.     Each of the above-referenced acts or omissions, singularly or in combination with others, constitutes a breach of such duties, which has caused damage to Plaintiffs in an amount in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery.

**<u>COUNT – 4 — FRAUD</u>**

24.     Defendants, collectively, failed to act in their dealings with Plaintiffs in good faith. To the contrary, Defendants, collectively, acted with the intent of depriving Plaintiffs of their property even though they had no legal right to do so and did not even have the legal rights they claimed.

25.     Each of the above-referenced acts or omissions, singularly or in combination with others, constitutes a breach of such duties, which has caused damage to Plaintiffs in an amount in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery.

## COUNT – 5 -  BREACH OF FIDUCIARY DUTIES

26.     By virtue of Defendants', collectively, contractual, statutory and/or common law duties and/or the course of conduct between Defendants and Plaintiff, Defendants owed Plaintiff fiduciary duties including the duties of good faith, fair dealing, trust, full disclosure, and loyalty. Defendants were required to perform these duties in the best interests of Plaintiffs, and with reasonable care and skill.

27.     Defendants breached these duties by, among others, placing Defendants' interests above those of Plaintiffs, through acts of conversion and fraud and by other acts and omissions that benefitted Defendants at the expense of Plaintiffs. Defendants dealt with Plaintiffs unfairly to the prejudice and detriment of Plaintiffs, and oppressed Plaintiffs' interests in the subject property.

28.     By and through the doctrines of ratification, vicarious liability, *respondeat superior,* express or apparent agency, joint enterprise liability, and/or master-servant relationship, among other things, Defendants are liable for the wrongful acts and omissions of Defendants' employees, representatives, associates/affiliates, and agents.

29.     Each of the above-referenced acts or omissions, singularly or in combination with others, constitutes a breach of such duties, which has caused damage to Plaintiffs in an

amount in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery.

## COUNT 6 – BREACH OF CONTRACT

30.     Plaintiffs are the owners of the real property located at 210 English Oaks Circle, Boerne, Kendall County, Texas 78006. Defendants, collectively, breached the contract between parties and breached Defendants' duties of good faith, fair dealing, trust, full disclosure, manner of collection and enforcing the Deed of Trust, Real Estate Note, and loyalty, placed Defendants' interests above those of Plaintiffs, and committed acts and omissions to benefit Defendants at the expense of Plaintiffs. Defendants dealt with Plaintiffs' affairs unfairly to the prejudice and detriment of Plaintiffs, and oppressed Plaintiffs interests in the subject property.

31.     Each of the above-referenced acts or omissions, singularly or in combination with others, constitutes a breach of such duties, which has caused damage to Plaintiffs in an amount in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery.

## COUNT – 7 – CONSTRUCTIVE FRAUD

32.     Each of the Defendants and Plaintiffs shared a confidential relationship giving rise to fiduciary duties owed by Defendants to Plaintiffs. In addition, Defendants owed legal and ethical duties to Plaintiffs. Defendants breached duties owed to Plaintiffs that, irrespective of moral guilt, the law declares fraudulent because of the tendency to deceive others, to violate confidence, or to injure public interests. Defendants' constructive fraud, as set forth above, caused damages to Plaintiffs in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery.

**COUNT 8 – SHAM TO PERPETUATE A FRAUD**

33.      As set forth above and herein, Defendants, collectively, were enjoined from selling the subject property, did not, in fact, sell the property and filed a fraudulent deed in the official records of Kendall County, Texas. Defendants have also filed a forcible entry and detainer action in Justice of the Peace Court, Precinct 3 in Kendall County, Texas to fully deprive Plaintiffs of their rightful property and to further damage Plaintiffs. Defendants', collectively, sham to perpetuate the fraud, as set forth above, has caused damages to Plaintiffs in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery.

**COUNT 9 -- Violations of State Unfair and Deceptive Acts and Practices Statute**

34.      Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

35.      Plaintiffs bring the following Consumer Claims under the consumer protection and unfair and deceptive acts and practices laws of their respective State, Texas, on their own behalf against Defendants. When greater details regarding the conduct of each Defendants become known, Plaintiffs will amend this Consolidated Complaint, as necessary. To the extent necessary to preserve these claims, Plaintiffs also hereby incorporate by reference, and plead in the alternative herein, the Consumer Claims set forth in Part 2 below.

36.      The acts and practices described in this Amended Complaint occurred while Defendants were engaged in trade, business or commerce with Plaintiff.

37.      Defendants have violated the consumer protection and unfair and deceptive acts and practices law of Texas through the following acts and omissions:

38.      Defendants engage in a widespread practice of instructing mortgagors to stop making mortgage payments under the false pretense that doing so will not hurt credit scores and is necessary for them to obtain a loan modification.

39.     Defendants induce mortgagors' reasonable reliance on Defendants to modify their mortgage loans upon successful completion of performance pursuant to agreements, including making payments and submitting documentation.

40.     Defendants fail to grant permanent HAMP or CHAMP loan modifications or advise individuals of their ineligibility pursuant to the terms of the form TPP Agreement.

41.     Defendants engage in the widespread misrepresentation of the status of loan modification applications.

42.     Defendants fail to hire, retain, employ, and supervise adequately trained staff, including knowingly designing and maintaining a loan modification system that was riddled with flaws and intentionally staffed with employees who lacked the training, experience, education or skill to properly perform their obligations;

43.     Defendants employ policies and practices that incentivize employees to rush customers off of the telephone as quickly as possible so as to frustrate customers, the intended result being that instead of complaining, the customers would give up and accept Defendants' faulty eligibility determinations. Defendants ensure further frustration by implementing a "one call resolution" policy under which customers would never speak to the same service representative twice;

44.     Defendants routinely loses mortgagors' loan documents, modification papers, and other necessary materials to evaluate eligibility and routinely rejects these customers' completely performed obligations on false and incorrect grounds;

45.     Defendants routinely requires borrowers to submit and re-submit duplicative financial information or documents already in Defendants' possession, claiming that it would not review a borrower for eligibility until and unless these documents are submitted time and again;

46.     Defendants fail to keep accurate records of mortgagor accounts, including accounting for fees, payments, credits, arrearages, and amounts owed;

47.     Defendants routinely and systematically makes incorrect calculations and determinations at improper times during the loan modification process, falsely claiming that Defendants were permitted to do so under applicable directives and that they were unable to achieve target income to payment ratios, and routinely provides customers with other false, pre-textual reasons for refusing to extend eligible borrowers their offers for permanent modification;

48.     Defendants engage in a widespread practice of causing improper interest and fees to accrue;

49.     Defendants expel Plaintiffs and others from its modification programs even though these Plaintiffs and others complied with all the terms and requirements thereof;

50.     Defendants engage in a widespread practice of making improper reports to credit reporting agencies; and

51.     Defendants engage in a widespread practice of unlawfully proceeding with foreclosures based on mortgagors' failure to meet impossible and shifting demands.

52.     These acts and omissions constitute bad faith.

53.     Defendants' conduct described in this Amended Complaint is willful and knowing and constitute intentional misrepresentations, false promises, and concealment, suppression, and omission of material facts, and further constitutes an unfair business practice.

54.     Defendants' unconscionable, unfair, and deceptive acts, practices, omissions, and representations as set forth in this Amended Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers such as the Plaintiffs.

55. Defendants' unconscionable, unfair, and deceptive acts and practices set forth in this Consolidated Complaint is likely and reasonably foreseeable to mislead Plaintiffs to their detriment.

56. Plaintiffs have suffered injury because of Defendants' conduct described in this Amended Complaint. Plaintiff have suffered financial harm by incurring additional debt to Defendants that they would not have paid but for Defendants' conduct. Plaintiffs were further injured by being subject to unnecessary or improper foreclosure processes. Moreover, Plaintiffs has suffered undue psychological stress and damaged credit, while enduring Defendants' unlawful, unfair, and/or fraudulent practices. They are threatened with additional harm as a direct and proximate result of Defendants' violations. By agreeing to forego regular loan payments Plaintiffs forgoe other remedies that might be pursued to save their home and their precious cash resources, such as restructuring their debt under the bankruptcy code, or pursuing other strategies to deal with their defaults, e.g., selling or renting the homes. Considering the declining real estate market in the United States since July 2009, failure to market and sell the property at that time has reduced the amount that Plaintiffs can recover from such sale. Plaintiffs have also given up valuable time and effort to meet Defendants' demands.

57. Further support for the prohibited practices allegation of the Plaintiffs is found in the *Texas Business and Commerce Code – Competition & Trade Practices* §17.46 entitled Deceptive Trade Practices Unlawful. The Code states that:

58. (a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60 and 17.61 of this code. Prohibited conduct is defined therein as:

59.     (1) passing off goods or services as those of another;

60.     (5)representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…

61.     (9)advertising goods or services with intent not to sell them as advertised;

62.     (11)making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

63.     (12)representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

64.     (14)misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction; and

65.     (24)failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed;

66.     As described above, the Defendants misrepresented the nature, quality, fairness and intent of the HAMP programs to the Plaintiffs who would not have entered the application process had true information been revealed, would not have agreed to incur substantial amounts of additional debt onto their mortgage and had no intent to ever modify or refinance the Plaintiffs' mortgage.

67.     Further, the Defendants represented that such program was advertised as approved and sponsored by the U.S. Government at the behest of the President to induce the Plaintiffs into participation.

68.     The Plaintiffs relied upon the false and fraudulent misrepresentations of the Defendants and did not receive true and complete information from the Defendants who intended to induce

the Plaintiffs into participating in a program with no real benefit to anyone other than the Defendants. The Plaintiffs incurred substantial damages as the direct result of the Defendants' acts and/or omissions for which they now seek recovery.

## PART 2 – Unfair Debt Collection Practices Violations

## COUNT 10 -- Unfair Debt Collection Practices in violation of the Texas Debt Collection Practices Act Texas Finance Code § 392.304

69.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein and brings this claim on their own behalf.

70.     Defendants, when acting as the servicer and committing the acts/omissions stated above, is a "debt collectors" engaging in "debt collection" practices Debt Collection Practices Act above.

71.     Such conduct, as described above, is prohibited by Texas Statutes. See *Texas Finance Code* §392.304 Fraudulent, Deceptive, or Misleading Representations. There, the code state clearly that

"(a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:

(3) representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer;

(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting a consumer debt's status in a judicial or governmental proceeding;

(9) representing falsely that a debt collector is vouched for, bonded by, or affiliated with, or is an instrumentality, agent, or official of, this state or an agency of federal, state or local government.

(10) using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communications source, authorization, or approval;

(14)representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business; and

(19)using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

72.     There is no doubt that Plaintiffs, hearing the alluring false representations promised by the Defendants' HAMP sales pitch was deceived into not only divulging copious amounts of personal financial data which can be used in post liquidation process collection but believed themselves to be engaging in a Federal Government program to assist them secure a loan modification. The Defendants are both servicer and beneficiary of the note made the basis of this suit and cannot escape liability for its' collections efforts by claiming not to be collecting upon a debt. Furthermore, by surprising the Plaintiffs with the foreclosure posting without first granting or denying the HAMP application, the Defendants are guilty of misrepresenting the status of the debt and its' condition or status in a judicial or governmental proceeding.

73.     The Fair Debt Collection Act specifically allows the Plaintiffs to not only file suit for damages but to seek injunctive relief from the violations complained of therein. See Texas Finance Code, § 392.403 Civil Penalties. Additionally, that section allows for the recovery of Attorney's fees by the prevailing party. Id. At 403(b)

74.     As a direct and proximate result of Defendants' violations of the Act, Plaintiffs have been injured. They have suffered financial harm, as well as undue psychological stress and damaged

credit, while enduring Defendants' unlawful practices. They are threatened with additional harm as a direct and proximate result of Defendants' violations of the Act. By engaging in this false and fraudulent HAMP application process, Plaintiffs forwent other remedies that might be pursued to save their home and her cash resources, such as restructuring their debt under the bankruptcy code, or pursuing other strategies to deal with their defaults, e.g., selling or renting the homes. Plaintiffs have also given up valuable time and effort to meet Defendants' demands. For these damages and Attorney's fees Plaintiffs now sue.

## ATTORNEYS' FEES AND COSTS

75.     As a proximate result of Defendants' breaches of contracts, fraud, and other wrongful conduct, Plaintiffs have been required to retain the undersigned counsels to prepare, file, and prosecute this lawsuit. Plaintiffs are entitled, pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code and other applicable law, to recover their reasonable attorneys' fees, expenses, and costs incurred in connection with this lawsuit.

## DAMAGES

76.     Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limit of this Court, for which Plaintiffs seek recovery.

## JURY DEMAND

77.     Plaintiffs request a trial by Jury.

## REQUEST FOR TEMPORARY RESTRAINING ORDER

78.     As is set forth above, Defendants have filed a forcible entry and detainer action pertaining to the subject property in the Justice of the Peace Court, Precinct 3 in Kendall County, Texas. A hearing on this matter was set for 1:30 p.m. on Monday, January 9, 2017. However, the Defendants intentionally removed the case prior to facing the Court to show cause

for violating the Court's Orders. Plaintiffs therefore request a Temporary Restraining Order to prevent the Defendants from attempting prevail on their forcible entry and detainer action by enjoining and preventing Defendants from having any such Order served on Plaintiffs by any peace officer, process server or any other person otherwise authorized by the State of Texas to serve such an Order.

79.     In support of their Request for Temporary Restraining Order, Plaintiffs would show unto this Court the following:

**IMMINENT AND IRREPARABLE HARM**

80.     Plaintiffs herein incorporate all facts and allegations as set forth above. Based on the above-referenced facts, Plaintiffs would show that immediate and irreparable injury, loss and damage would result before notice can be served for a hearing. T.R.C.P. 680. Plaintiffs' rights as outlined above are in imminent danger of harm through the loss of the property both in a legal and equitable right should the forcible entry and detainer action proceed and Plaintiffs be deprived of their rightful property before Plaintiffs have the opportunity to prove their allegations in the instant lawsuit. The imminent harm as outlined above is not merely remote or speculative but definite and probable. *See Smith v Vial*, 555 S.W. 2d 215 (Civ. App-Dallas 1997, no writ): Plaintiffs will suffer irreparable injury unless the forcible entry and detainer action is restrained and the Defendants are enjoined from having any such Order served on Plaintiffs. The service of an Order approving the forcible entry and detainer action will likewise deprive the Plaintiffs of the use and enjoyment of the property permanently. Additionally, Plaintiffs will lose the right to sell or mortgage the property at some future date and will not obtain full benefit of the appreciated value.

## PROBABLE RIGHT TO RELIEF

81.     Plaintiffs herein incorporate all facts and allegations as set forth above. To be entitled to a restraining order or temporary injunction, Plaintiffs must show a probable right to recover on its alleged allegations and causes of actions. *See Sun Oil Co. v. Whitaker,* 424 S.W. 2d 216, (Tex. 1968). Plaintiffs must show that a bona fide issue exists as to the Plaintiffs' right to ultimate relief. *See Anderson Oaks v. Anderson Mill Oaks,* 734 S.W.2d 42 (Tex. App-Austin 1987, no writ). Plaintiffs need not show that they will prevail on the merits. The probable right to prevail may be shown by allegations that the underlying obligation is subject to attack. *See Smith v. Vial,* 555 S.W. 2d 215 (Civ. App.-Dallas 1977, no writ).

82.     Plaintiffs can show that the Defendants, by and through their authorized representatives, filed a fraudulent deed in the official records of Kendall County, Texas. Moreover, Defendants provided false and misleading information to Plaintiffs throughout the interaction between Plaintiffs and Defendants. Further, as is evidenced by the attached Affidavits, Plaintiffs have previously been denied the opportunity to make payment against the deficient amounts by representatives of Defendant Ocwen. Plaintiffs were diligent in following up to avoid ending up in the foreclosure process. Unfortunately, virtually every representative of Defendant Ocwen they spoke with gave them information, in response to serious inquiries about important matters, which Plaintiffs later find out was wholly incorrect or that the Ocwen representatives failed to do what they had agreed to do in material circumstances. A bona fide dispute exists and an injunction should be granted as the dispute involves an irreparable injury to real or personal property. *See Tex. Civ. Prac. & Renz Code, Section 65.011(5).*

**INADEQUATE REMEDY AT LAW**

83.     Plaintiffs herein incorporate all facts and allegations as set forth above.

The Plaintiffs will show that there is no remedy at law that is clear and adequate to protect the Plaintiffs' property interest against this wrongful forcible entry and detainer action by the Defendants seeking to obtain rights to Plaintiffs' property through fraud and other wrongful conduct. Plaintiffs request injunctive relief so that justice may be done, not merely for delay.

**PRAYER**

WHEREFORE, Plaintiffs pray that:

a.      A Temporary Restraining Order is issued without notice to the Defendants, restraining Defendants, their investors, insurers, attorneys, agents, servants, servicers, contractors and/or employees from directly or indirectly having an Order of forcible entry and detainer served on Plaintiffs by any peace officer, process server or other individual or entity that would otherwise be authorized by the State of Texas to serve such an Order or further attempting to foreclose and/or sell, the subject property;

b.      Defendants be cited to appear and show cause, and that on hearing, a Temporary Injunction be issued enjoining Defendants, their investors, insurers, attorneys, agents, servants, servicers, contractors and/or employees, from directly or indirectly having an Order of forcible entry and detainer served on Plaintiffs by any peace officer, process server or other individual or entity that would otherwise be authorized by the State of Texas to serve such an Order or further attempting to foreclose and/or sell, the subject property. Plaintiffs request an injunction to preserve the status quo pending a trial on the merits;

c.      Following trial, a permanent injunction, in addition to any and all damages awarded by the trier of fact, enjoining Defendants, their investors, insurers, attorneys, agents, servants,

servicers, contractors and/or employees, from directly or indirectly enjoining Defendants, their investors, insurers, attorneys, agents, servants, servicers, contractors and/or employees, from directly or indirectly having an Order of forcible entry and detainer served on Plaintiffs by any peace officer, process server or other individual or entity that would otherwise be authorized by the State of Texas to serve such an Order or further attempting to foreclose and/or sell, the subject property;

d.     Plaintiffs recover costs incurred in the filing and prosecution of this matter, including costs of Court and attorney's fees and expenses.

e.     Pre- and post-judgment interest at the highest rates allowed by law; and

Such other and further relief, general or specific, at law or in equity,  to which Plaintiffs are justly entitled.

Respectfully Submitted,

**Oscar L. Cantu, Jr.
Attorney & Counselor at Law**

By:     _/s/ by Oscar L. Cantu, Jr._____
         Oscar L. Cantu, Jr.
         SBN 03767448
         R3Oscar@aol.com

         1515 N. St. Mary's
         San Antonio, Texas 78215
         (210)472-3900
         (210)472-3901 fax
         **Attorney for the Plaintiffs**

## CERTIFICATE OF SERVICE

        This is to certify that a true and correct copy of this pleading has been served upon all counsel of record via ECF service with the Court pursuant to the Federal Rules of Civil Procedure on this, the 31st day of July 2017.

                        _/s/ by Oscar Cantu_____
                        Oscar Luis Cantu, Jr.